

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

**GERALD C. MANN**
ATTORNEY GENERAL

Honorable Jno. Q. McAdams
Commissioner
Department of Banking
Austin, Texas

Dear Mr. McAdams:  Opinion No. O-5451

Re: Authority of the Congress to
authorize branch banking by
national associations in Texas.

Your request for a legal opinion from this department is as follows:

"The Comptroller of the Currency is permitting National banks to establish banking facilities within the boundary limits (and it may be some of these branches are being located outside of such boundary limits) of military reservations and Navy yards permitted by Senate Bill 1803 passed by the 77th Congress Second Session.

"The Constitution of our State expressly prohibits the establishment of branch banking, as does Article 538 General Provisions of the Revised Statutes.

"We will appreciate your opinion as to whether the National Congress acted within its rights when it approved a law permitting branch banking in States where such facilities are definitely prohibited."

The pertinent portions of S 1803 are as follows:

"That section 5155 of Revised Statutes of 1873, as amended (U.S.C., title 12, sec. 36; U.S.C., Supp. V, title 12, sec. 36), be further amended by adding the following paragraph at the end thereof:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Jno. Q. McAdams - page 2

"'Notwithstanding any provision of law
to the contrary, a national bank may, upon
authorization of the Comptroller of the Cur-
rency and subject to such conditions and
limitations as he shall prescribe, provide
banking facilities at United States military
reservations and navy yards and stations, but
no such authorization shall become effective
or continue in effect except with the consent
of the Secretary of War or the Secretary of
the Navy, whichever has jurisdiction.'"

The general principles of conflict of laws, as ap-
plied to banking institutions, are well settled. They are
stated in Davis v. Elmira Sav. Bank (U.S.) 40 Law Ed. 700,
as follows:

"National banks are instrumentalities
of the federal government, created for a
public purpose and as such necessarily sub-
ject to the paramount authority of the
United States. It follows that an attempt
by a state to define their duties or con-
trol the conduct of their affairs is abso-
lutely void wherever such attempted exer-
cise of authority expressly conflicts with
the laws of the United States and either
frustrates the purpose of the national
legislation or impairs the efficiency of
these agencies of the federal government
to discharge the duties for the perform-
ance of which they were created. These
principles are axiomatic and are sanction-
ed by the repeated adjudications of the
court."

This pronouncement has received the approval of the
Supreme Court in numerous cases, some of which are as follows:

Easton v. Iowa (U.S.) 47 Law Ed. 452;

Clement Nat'l Bank v. Vermont (U. S.)
58 Law Ed. 147;

First National Bank & Trust Company v.
Uhl, 94 Fed. (2) 1013, certiorari
denied (U.S.) 82 Law Ed. 1546.

The rule has been somewhat differently stated by District Judge Donohee in U. S. v. Doherty, 18 Fed. Supp. 793, as follows:

"The above powers given to Congress by the Constitution to protect the currency must necessarily be extended to the power to protect the banking system and to create fiscal agencies. * * * ".

The ambit of state authority with respect to national associations is well defined in the following language:

"National banks are brought into existence under federal legislation, are instrumentalities of the federal government, and are necessarily subject to the paramount authority of the United States. Nevertheless, national banks are subject to the laws of a state in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies, or conflict with the paramount law of the United States." -- First National Bank v. Missouri (U.S.) 68 Law Ed. 486.

First National Bank v. Missouri itself involved a question of branch banking, for which reason we will notice it more closely.

The State of Missouri on the relation of her Attorney General instituted a proceeding in quo warranto to determine the authority of the respondent, First National Bank, to conduct a branch bank at another than its regular place of business in the City of St. Louis.

The State Supreme Court, in which the action was brought as an original proceeding, ordered the ouster as prayed for by the state, saying:

"The information filed herein by the Attorney General does not involve the commission of an act in conflict with the laws of the United States, nor does it tend to impair

Honorable Jno. Q. McAdams - page 4

the efficiency of any agency of the national government. It can not, therefore, be said to be in conflict with the rule above announced, (supremacy of Act of Congress over state law) and hence does not violate it." -- State ex rel Attorney General v. First National Bank of St. Louis (Mo.) 249 S. W. 619, 30 A. L. R. 918,

The decision of the State Supreme Court was affirmed by the United States Supreme Court, saying:

"Does it (the state statute) conflict with the laws of the United States? In our opinion, it does not. The extent of the powers of national banks is to be measured by the terms of the federal statutes relating to such associations, and they can rightfully exercise only such as are expressly granted, or such incidental powers as are necessary to carry on the business for which they are established."

The court further holds that the establishment and maintenance of a branch or branches would not be the exercise of a necessarily incidental power to operating the bank, and further stated:

"Clearly the state statute, by prohibiting branches, does not frustrate the purpose for which the bank was created, or interfere with the discharge of its duties to the Government, or impair its efficiency as a federal agency. This conclusion would seem to be self-evident; but, if warrant for it be needed, it sufficiently lies in the fact that national banking associations have gone on for more than half a century without branches, and upon the theory of an absence of authority to establish them. If the non-existence of such branches or the absence of power to create them, has operated or is calculated to operate to the detriment of the Government, or in such manner as to interfere with the efficiency of such associations as federal agencies, or to frustrate their purposes, it is inconceivable that the fact would not long since have been discovered and steps taken by Congress to remedy the omission."

Honorable Jno. Q. McAdams - page 5

Supervening to control your inquiry, however, is the Act of the Congress herein being considered, specifically authorizing the branch banks mentioned therein, and which Act by all the tokens is the supreme law of the land, overriding any and all laws of the state -- whether constitutional or statutory -- in conflict therewith.

You are therefore respectfully advised that upon the authorities and reasoning as well the Act is within the powers of the Congress in the exercise of their exclusive jurisdiction with respect to the authorizing such branch banks.

APPROVED JUL 26, 1943

*[signature]*

ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By    *[signature]*
      Ocie Speer
      Assistant

OS-LR





APPROVED
OPINION
COMMITTEE
BY *[signature]*
CHAIRMAN